| | |
|---|---|
| COUNTY OF GALVESTON<br><br>      Plaintiff,<br><br>  vs.<br><br>PURDUE PHARMA L.P., et al.<br><br>      Defendants. | Case No. 4:18-cv-04708 |

| | |
|---|---|
| COUNTY OF LEON<br><br>      Plaintiff,<br><br>  vs.<br><br> PURDUE PHARMA L.P., et al.<br><br>      Defendants. | Case No. 4:18-cv-04709 |

## PURDUE'S RESPONSE TO PLAINTIFFS' JOINT MOTION TO REMAND

Pursuant to 28 U.S.C. §§ 1446-47, Purdue Pharma L.P.; Purdue Pharma Inc.; and The Purdue Frederick Company, Inc., (together, "Purdue"), respond to Plaintiffs' Joint Motion to Remand as follows:

### INTRODUCTION

Plaintiffs contest diversity jurisdiction in these two cases based on their incorrect allegation that named defendants Purdue Pharma L.P. and Insys Manufacturing LLC are citizens of Texas. But the evidence is clear that Purdue Pharma L.P. and Insys Manufacturing LLC are not Texas citizens, and were not Texas citizens at the time Plaintiffs filed their lawsuit or at the time Purdue removed these cases. In the case of Purdue, as set forth in Purdue's Notice of

Removal, Dr. Richard Sackler—the only alleged Texas citizen in Purdue's ownership chain—moved out of the State of Texas before Plaintiffs filed their lawsuits. Plaintiffs argue that Dr. Sackler remains a Texas citizen because there is insufficient proof that he intends to remain in Florida where he now resides. But Plaintiffs cannot dispute that Dr. Sackler sold his Texas home, moved to Florida, exchanged his Texas driver's license for a Florida license, and registered to vote in Florida. These are precisely the type of facts that courts have held sufficient to demonstrate that a person has changed his citizenship.

As to Insys Manufacturing LLC, Plaintiffs ignore controlling case law in their analysis of this LLC's citizenship. As a limited liability company, Insys Manufacturing LLC takes on the citizenship of its members. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Insys Manufacturing LLC has only one member, Insys Development Company, Inc. As a corporation, Insys Development Company is a citizen of the state in which it is incorporated and of the state in which it maintains its principal place of business. 28 U.S.C. §1332(c); *see also Hertz Corp. v. Friend,* 559 U.S. 77, 80 (2010). Insys Development Company is incorporated in Delaware and maintains its principal place of business in Arizona. (Exhibit 1, Declaration of Robert Schwimmer ("Schwimmer Decl.").) Accordingly, Insys Manufacturing LLC is a citizen of only Delaware and Arizona.

Plaintiffs, however, ask this Court to ignore these established principles and look to the citizenship of Insys Development Company, Inc.'s parent corporation, Insys Therapeutics, Inc., to determine where Insys Manufacturing LLC is a citizen. But the citizenship of a corporation such as Insys Development Company, Inc. is determined only by its own state of incorporation and principal place of business. 28 U.S.C. §1332(c); *see also Elizondo v. Keppel Amfels, L.L.C.*, No. 1:14-CV-220, 2015 WL 1976434, at *2 (S.D. Tex. May 1, 2015). The citizenship of its

parent corporation is irrelevant. *Id.* And even if this Court adopted Plaintiffs' novel theory of corporate citizenship to consider Insys Development Company, Inc.'s parent corporation, Insys Therapeutics itself is also incorporated in Delaware and maintains its principal place of business in Arizona. (Ex. 1, Schwimmer Decl. at Ex. 1 and 4 of Decl.) Plaintiffs' allegation that Insys Therapeutics owns a manufacturing facility in Texas has no bearing on its citizenship, which is determined by the clear and long-established statutory and legal principles set out above.

Purdue affirmatively alleged the citizenship of all defendants in the Notice of Removal, and Plaintiffs have no legitimate basis to challenge the citizenship of Purdue Pharma L.P. or Insys Manufacturing LLC. The motion to remand should be denied.

## PROCEDURAL BACKGROUND

On November 13, 2018, the counties of Galveston and Leon filed petitions naming various Purdue entities, Insys entities, and many other pharmaceutical entities as Defendants. On December 11, 2018, Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. filed a Notice of Transfer of Tag-Along Case transferring both cases into the Texas Opioid MDL No. 2018-63587 pending in the 152nd District Court for Harris County, Texas. Plaintiffs do not contest that the cases were properly joined in the Texas Opioid MDL.

On December 13, 2018, Purdue timely removed the Galveston County and Leon County cases to federal court based on diversity jurisdiction. Galveston and Leon Counties filed a joint motion to remand on December 18, 2018, alleging that complete diversity does not exist because Purdue Pharma L.P. and Insys Manufacturing LLC are citizens of Texas. Plaintiffs do not allege

that any other party precludes diversity jurisdiction. Nor do Plaintiffs dispute that the amount in controversy requirement is met.[1]

On December 14, 2018, Purdue identified the Galveston and Leon County actions as tag-alongs for inclusion in MDL Case No. 2804, *In re: National Prescription Opiate Litigation,* pending in the Northern District of Ohio. On January 4, 2019, the United States Judicial Panel on Multidistrict Litigation conditionally transferred these three actions to MDL 2804. (*See* Ex. 2, Conditional Transfer Order, *In re: National Prescription Opiate Litigation* (MDL Case No. 2804 filed Jan. 4, 2019) (Dkt. 3391).)

## ARGUMENT

**I.     There is complete diversity among the parties.**

**A.     Purdue Pharma L.P. was not a citizen of Texas when the removed cases were filed and served.**

Purdue Pharma L.P. is not a Texas citizen for diversity purposes because there are no Texas citizens in the Purdue Pharma L.P. ownership chain. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397-98 (5th Cir. 2009) (finding that diversity jurisdiction existed after tracing the parties' "citizenships down the various organizational layers where necessary . . . ."). Purdue Pharma L.P. is a limited partnership with two members. A partnership is a citizen of every state in which its partners are citizens. *See Americold Realty Tr. v. Conagra Foods, Inc.,* 136 S. Ct. 1012, 1015 (2016). Where a partnership's partners are themselves partnerships, the diversity analysis requires an evaluation of the citizenship of each entity in the ownership chain. *Mullins,* 564 F.3d at 397-98.

---

[1]     Diversity jurisdiction requires an amount in controversy of $75,000. 28 U.S.C.§1332(a). That requirement is met and unchallenged here.

Dr. Sackler is the only person or entity in the Purdue Pharma L.P. ownership chain alleged by Plaintiffs to be a citizen of Texas. Purdue does not dispute that Dr. Sackler's citizenship is relevant to the diversity analysis concerning Purdue Pharma L.P. based on the fact that he is one of two trustees of a Connecticut trust within the ownership chain of Purdue Pharma L.P. and a trust takes on the citizenship of its trustees. *Americold Realty Tr.*, 136 S. Ct. at 1016-17. The Connecticut trust of which Dr. Sackler is a trustee owns a partnership interest in Rosebay Medical Company L.P. Rosebay Medical Company L.P. holds a partnership interest in BR Holdings Associates L.P., which holds a partnership interest in PLP Associates Holdings L.P. PLP Associates Holdings L.P. holds a partnership interest in Pharmaceutical Research Associates L.P. (formerly known as Purdue Holdings L.P.), which, in turn, owns a partnership interest in Purdue Pharma L.P. Dr. Sackler, however, is not a citizen of Texas.

In June of 2018, Dr. Sackler sold his residence in Texas and shortly thereafter moved to Florida where he leased a new residence with the intent to remain there. (*See* Ex. 3, Declaration of Richard S. Sackler ("Sackler Decl.").) Thus, by November 2018 when Plaintiffs filed their petitions, Purdue Pharma L.P. was no longer a Texas citizen. Removal on diversity grounds was therefore proper because complete diversity existed at the time Plaintiffs' petitions were filed and when Purdue timely removed them on December 13, 2018. *See Coury v. Prot,* 85 F.3d 244, 248-49 (5th Cir. 1996); *see also Pathology Assocs. v. Travelers Lloyds of Texas Ins. Co.,* No. 7:14-cv-12*,* 2014 WL 12678318, at *1 (S.D. Tex. Mar. 11, 2014).

### 1. Any presumption of continuing domicile is easily rebutted by Dr. Sackler's move to Florida and intent to remain there.

Plaintiffs contend that Dr. Sackler's change of citizenship should not be credited, relying on a "presumption of continuing domicile" that courts recognize when a person relocates. (Joint Motion to Remand at 4.) But the Fifth Circuit has held that any such presumption is defeated

where, as in this case, that person demonstrates that he or she: (1) resides in a new state, and (2) intends to remain in the new state indefinitely. *Acridge v. Evangelical Lutheran Good Samaritan Soc.,* 334 F.3d 444, 448 (5th Cir. 2003); *see also Melendez-Garcia v. Sanchez,* 629 F.3d 25, 41 (1st Cir. 2010). The length of time a person resides in a new state is irrelevant—once he or she has moved and intends to remain in a new state, the "new domicile is instantaneously established." *Acridge*, 334 F.3d at 448 ("There is no durational residency requirement in the establishment of domicile . . . .").

Plaintiffs do not and cannot dispute that Dr. Sackler has, in fact, moved to Florida and now resides there. The first requirement is therefore met.

In evaluating the second requirement—intent to remain indefinitely—courts conduct a fact-based analysis. *Id.* In conducting this analysis, the courts of the Fifth Circuit look to factors such as "where the person votes, owns property, has a driver's license, and conducts his business." *Pathology Assocs.,* 2014 WL 12678318, at *2 (finding sufficient evidence to show change in domicile where defendant moved to Colorado, paid Colorado income tax, and obtained a Colorado driver's license); *Cedillo v. Allstate Vehicle And Prop. Ins. Co.,* No. 7:17-CV-232, 2018 WL 998494, at *2 (S.D. Tex. Jan. 5, 2018) (finding Kansas photocopy of defendant's driver's license persuasive evidence of defendant's intent to remain in Kansas); *Nyamtsu v. Melgar,* No. H-13-2333, 2013 WL 6230454 (S.D. Tex. Dec. 2, 2013) (evidence that defendant moved to Maryland sufficient to show intent to remain even though defendant retained Texas bank accounts and Texas driver's license); *see also Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 32 (1st Cir. 2008) (finding change in domicile where defendant submitted two declarations of intent to remain in Florida, ledgers reflecting payments for residence in Florida, and evidence of the issuance of a Florida driver's license).

Applying these factors, any presumption of continuing domicile is easily defeated here. As Plaintiffs concede, Dr. Sackler sold his Texas residence in June of 2018. (Joint Motion to Remand, Ex. E; *see also* Ex. 3, Sackler Decl.) On August 17, 2018, he leased a home in Riviera Beach, Florida. (Ex. 3, Sackler Decl.) On October 2, 2018, he was issued a Florida driver's license. (Ex. 3, Sackler Decl.) Dr. Sackler surrendered his Texas driver's license when he applied for his Florida driver's license. (Ex. 3, Sackler Decl.) He registered to vote in Florida on October 2, 2018, and in fact voted in the November 2018 general election as a Florida resident. (Ex. 3, Sackler Decl.; Ex. 4, Voter Information Lookup, https//registration.elections.myflorida.com/en/CheckVoterStatus.) He did not vote in Texas. (Ex. 3, Sackler Decl.) Taken together, this evidence overwhelmingly demonstrates that Dr. Sackler is a Florida citizen as he has abandoned his Texas citizenship and intends to reside in Florida indefinitely. *See Acridge*, 334 F.3d at 448.

> **2.    Plaintiffs fail to raise any genuine dispute as to Dr. Sackler's intent to remain in Florida.**

Plaintiffs offer several pieces of "evidence" they claim demonstrate that Dr. Sackler is still a Texas citizen. None of this evidence, however, refutes the fact that Dr. Sackler is a resident of Florida. First, despite conceding that Dr. Sackler sold his Texas property in June of 2018 (Joint Motion to Remand at 5), Plaintiffs claim that Dr. Sackler must intend to remain a citizen of Texas because an online property record shows that there is a homestead exemption on file for Dr. Sackler's former residence.[2] But Plaintiffs provide no evidence—because there is none—that Dr. Sackler applied for a homestead exemption after June of 2018. Homestead

---

[2]    Plaintiffs obtained Exhibit D from the Travis Central Appraisal District's website, which expressly notes that "it makes no claims, promises or guarantees about the accuracy, completeness, or adequacy of th[e] information" provided on that website. (*See* Exhibit 8 http://propaccess.traviscad.org/clientdb/?cid=1.)

exemptions in Texas are automatically extended each year after they are initially granted. (*See* Exhibit 6, Texas Comptroller of Public Accounts, Residence Homestead Exemption Frequently Asked Questions, https://comptroller.texas.gov/taxes/property-tax/exemptions/residence-faq.php ("Once you have received the [homestead] exemption, you do not need to reapply unless the chief appraiser sends you a new application.").) Once it was established, Dr. Sackler's homestead exemption continued to run on his former Texas residence without any affirmative action by Dr. Sackler to apply for or otherwise seek that exemption. Thus, that Dr. Sackler's Texas property qualified for a homestead exemption at some point has no bearing on Dr. Sackler's intent to remain in Florida.

Second, Plaintiffs observe that Dr. Sackler's Texas driver's license is not expired. But as Dr. Sackler attests, he surrendered that license and now holds only a Florida driver's license. (Ex. 3, Sackler Decl.) This is consistent with the Florida Department of Motor Vehicles' policy that "a valid driver's license from another US state … can be exchanged for a Florida Driver's License." (*See* Exhibit 7, Florida Department of Motor Vehicles website, https://www.dmvflorida.org/drivers-license/out-of-state-drivers.) Dr. Sackler's decision to surrender his Texas license for a Florida license demonstrates his intent to remain in Florida. *See Cedillo,* 2018 WL 998494, at \*2.

Finally, Plaintiffs argue that Dr. Sackler must be a Texas citizen because he allegedly has not changed his voter registration yet. This is simply wrong. Public records and Dr. Sackler's declaration show that Dr. Sackler registered to vote in Florida in October of 2018 and did in fact vote in Florida in the November 2018 general election. (Ex. 3, Sackler Decl.; Ex. 4, Voter Information Lookup, https//registration.elections.myflorida.com/en/CheckVoterStatus.) That he has registered to vote and voted as a resident of Florida is further evidence of Dr. Sackler's intent

to remain in Florida indefinitely. *See Padilla-Mangual*, 516 F.3d at 32 ( "[T]he place a person registered to vote is a 'weighty' factor in determining domicile.").

Plaintiffs' alleged evidence proves nothing more than that Dr. Sackler was once a citizen of Texas. But that fact is undisputed. The evidence put before this Court by Purdue establishes that Dr. Sackler is no longer a Texas citizen and was not a Texas citizen at the time Plaintiffs filed their petitions. Plaintiffs identify no competent evidence to the contrary.

**B.      Insys Manufacturing LLC was not a citizen of Texas when the removed cases were filed and served.**

Insys Manufacturing LLC is a limited liability company. (Ex. 1, Schwimmer Decl. at Ex. 3 of Decl.) For diversity purposes, the citizenship of a limited liability company is determined solely by the citizenship of its members. *Harvey,* 542 F.3d at 1080.[3] Where a limited liability company has only one member, the limited liability company takes on the citizenship of its sole member. *See id.*; *Elizondo,* 2015 WL 1976434, at *2. Insys Manufacturing LLC has only one member, Insys Development Company, Inc. (Ex. 1, Schwimmer Decl. and Joint Motion to Remand at 13.) Insys Manufacturing LLC therefore takes on the citizenship of Insys Development Company, Inc.

Insys Development Company, Inc. is a corporation. (Ex. 1, Schwimmer Decl. at Ex. 2 of Decl.) For diversity purposes, a corporation is a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of

---

[3]    The Fifth Circuit noted in *Harvey* that every federal appellate court to address this issue had reached the same conclusion. *Harvey*, 542 F.3d at 1080, citing *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.,* 435 F.3d 51 (1st Cir. 2006); *Handelsman v. Bedford Village Assocs. Ltd. P'ship,* 213 F.3d 48 (2nd Cir. 2000); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004); *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 Fed.Appx. 731 (6th Cir. 2002); *Wise v. Wachovia Securities, LLC,* 450 F.3d 265 (7th Cir. 2006); *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.,* 357 F.3d 827 (8th Cir. 2004); *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894 (9th Cir. 2006); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.,* 374 F.3d 1020 (11th Cir. 2004).

business." 28 U.S.C. §1332(c). A corporation's principal place of business is where its "high level officers direct, control, and coordinate the corporation's activities, *i.e.*, its nerve center." *Hertz,* 559 U.S. at 78 (internal quotations omitted); *Balachander v. AET Inc. Ltd.,* No. H-10-4805, 2011 WL 4500048, at *1 (S.D. Tex. Sept. 27, 2011). Plaintiffs do not and cannot dispute that Insys Development Company, Inc. is incorporated in Delaware and maintains its principal executive offices in Chandler, Arizona, where the company makes decisions to direct, control, and coordinate corporate activities. (Ex. 1, Schwimmer Decl. at Ex. 2 of Decl.) Because Insys Development Company, Inc. is therefore a citizen of Delaware and Arizona, Insys Manufacturing LLC is also a citizen of Delaware and Arizona.

Ignoring the plain language of Section 1332 and applicable case law, Plaintiffs argue that Insys Manufacturing LLC is a citizen of Texas. First, they improperly conflate personal jurisdiction with citizenship. (Joint Motion to Remand at 5.) But the two legal concepts are entirely distinct – Insys Manufacturing LLC does not assert in the Notice of Removal that it is not subject to personal jurisdiction in Texas, nor is personal jurisdiction relevant to a diversity inquiry. Although it is not clear, Plaintiffs appear to argue that because Insys Manufacturing LLC was formed in Texas and maintains a place of business there, the Court should treat it as a corporation for purposes of determining its citizenship. But Plaintiffs fail to recognize that the Fifth Circuit expressly rejected this argument in *Harvey*. *Harvey*, 542 F.3d at 1079-80. In that case, the Fifth Circuit addressed the citizenship of a limited liability company organized in Louisiana. *Id.* The Court expressly held that "a LLC should not be treated as a corporation for purposes of diversity jurisdiction. Rather, the citizenship of a LLC is determined by the citizenship of all of its members." *Id.* The Court therefore concluded that an LLC organized in Louisiana was nevertheless <u>not</u> a citizen of Louisiana. *Id.*

Plaintiffs also claim, with no supporting case law, that "[b]ecause the citizenship of an LLC is determined by the citizenship of all of its members, that determination moves up the chain of companies until it ends." (Joint Motion to Remand at 5.) They ask this Court to apply this novel principle to ignore the corporate form of Insys Manufacturing LLC's only member (Insys Development Company, Inc.) and look to the citizenship of Insys Development Company, Inc.'s parent corporation. This gambit fails for two reasons. First, Plaintiffs do not cite any case that suggests that the citizenship of a corporation is affected by the citizenship of its parent corporation. To the contrary, Section 1332 makes clear that this is wrong. The citizenship of a corporation is determined only by the state where "it has been incorporated" and the state "where it has its principal place of business." 28 U.S.C. §1332(c).

But even if Plaintiffs' premise were correct, Insys Development Company, Inc.'s parent corporation (Insys Therapeutics, Inc.) is itself a corporation whose citizenship is therefore determined by its place of incorporation and principal place of business – neither of which is in Texas. (Ex. 1, Schwimmer Decl. at Ex. 1 and 4 of Decl.) Plaintiffs acknowledge in their original petitions that Insys Therapeutics, Inc. is incorporated in Delaware and has its principal place of business in Arizona. Pet. at ¶ 37 (Dkt. No. 1, Ex. 2.) They argue, however, that Insys Therapeutics, Inc. "makes its manufacturing headquarters in Texas." (Joint Motion to Remand at 5.) Plaintiffs cite no case supporting the notion that a corporation's "manufacturing headquarters" – whatever that may mean – is its principal place of business for purposes of Section 1332. Nor can they – The United States Supreme Court expressly rejected that proposition. *Hertz*, 559 U.S. at 92-93. In *Hertz*, the Supreme Court held that Section 1332's reference to "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place

that Courts of Appeals have called the corporation's 'nerve center'." *Id.* As set forth in the declaration of Robert Schwimmer, attached at Exhibit 1, the only place Insys Therapeutics, Inc.'s executives work and make corporate, legal, and financial decisions is Chandler, Arizona. Plaintiffs offer no evidence to the contrary. Instead, Plaintiffs submit documentation that shows only that: (1) there is a facility in Round Rock, Texas owned by Insys Manufacturing LLC; and (2) Insys Therapeutics, Inc. has assigned manufacturing rights under two contracts to Insys Manufacturing LLC. (Pl's Ex I, J, K and Ex. 1, Schwimmer Decl. at Ex. 1 and 4 of Decl.) The assignment of rights under two contracts does not make such a facility the "manufacturing headquarters" of a parent company two levels up the chain of ownership. Even if it did, that would be irrelevant to determining the "nerve center" of that corporation. The location of one manufacturing facility therefore has no bearing on Insys Therapeutics Inc.'s principal place of business or citizenship. *See Hertz*, 559 U.S. at 78.

Because Supreme Court and Fifth Circuit case law establish that Insys Manufacturing LLC is not a Texas citizen, the Joint Motion to Remand should be denied.

## II. Purdue's Notice of Removal met its burden to include a "short and plain statement" of diversity.

Plaintiffs claim that Purdue's removal was somehow improper because it was "based upon nothing more than [Purdue's] unsubstantiated allegations." (Joint Motion to Remand at 3.) But a notice of removal need only contain "a short and plain statement of the grounds for removal." 28 U.S.C. §1446(a). Where diversity is the grounds for removal, a removing party need only "distinctly and affirmatively allege . . . that the plaintiff and defendant are citizens of different states." *HSBC Bank USA Nat'l Ass'n v. Vaughan*, No. H–13–0736, 2014 WL 125938, at *1 (S.D. Tex. Jan. 8, 2014) (quoting *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804-05 (5th Cir. 1991)). Purdue's Notice of Removal not only set out the citizenship for each Defendant, but

also included additional facts relevant to the citizenship of Purdue Pharma L.P. and Insys Manufacturing LLC, including principal places of business, states of incorporation, and members of the relevant partnerships. (Notice of Removal.) Most relevantly, the Notice of Removal included a short statement of facts explaining that Purdue Pharma L.P. was no longer a Texas citizen because "the trustee who was previously located in Texas moved to another state and no longer resides in Texas." (*Id.* ¶ 13.) Also included was a short statement of facts showing that Insys Manufacturing LLC was not a Texas citizen and explaining its sole member's citizenship. Nothing more was required. *See* 28 U.S.C. §1446(a).

Only when a party challenges a removing party's citizenship allegations must the removing party proffer evidence to support those allegations by a preponderance of the evidence. *Welsh v. American Sur. Co. of N.Y.,* 186 F.2d 16, 17 (5th Cir. 1951). A removing party can meet this burden through submission of a sworn statement of facts or other evidence that supports diversity jurisdiction. *Cronin v. State Farm Lloyds*, No. H-08-1983, 2008 WL 4649653, at *1 (S.D. Tex. Oct. 10, 2008) (citing *Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 638-39 (5th Cir. 2003)).

Dr. Sackler's sworn declaration and the other evidence submitted with this opposition establish that Dr. Sackler (1) sold his property in Texas in June of 2018; (2) leased a home in Riviera Beach, Florida on August 17, 2018; (3) surrendered his Texas driver's license and obtained a Florida Driver's License in October of 2018; (4) registered to vote in Florida in October of 2018; and (5) voted as a resident of Florida in the November 2018 general election. (Ex. 3, Sackler Decl.; Ex. 7, Voter Information Lookup, https//registration.elections.myflorida.com/en/CheckVoterStatus.) All of these events occurred

before the removed cases were filed and served in November 2018. Purdue has therefore met its burden of proof regarding Dr. Sackler's Florida citizenship.

Robert Schwimmer's declaration and corporate filings of Insys entities, attached at Exhibit 1, establish that Insys Manufacturing LLC's sole member is Insys Development Company, Inc., which is incorporated in Delaware with its principal place of business in Arizona. Plaintiff concedes that these allegations are true. (Joint Motion to Remand at 5-7.) Purdue has therefore met its burden of proof regarding both challenged entities – Purdue Pharma L.P. and Insys Manufacturing LLC.

*Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530 (5th Cir. 2017), cited by Plaintiffs, is inapposite. In *Settlement Funding*, the court found a party's citizenship allegations insufficient to support removal because it conceded that it could not demonstrate the citizenship of each of the relevant entities, and thus could not meet its burden to establish diversity. *See Id.* Purdue Pharma L.P., however, alleged the citizenship of each party, including the proper citizenship for Insys Manufacturing LLC and describing why Purdue Pharma L.P. was no longer a Texas citizen, and has provided further evidence of the citizenship of both Purdue Pharma L.P. and Insys Manufacturing LLC with this response.

## III.     Whether prior cases were removed is irrelevant.

Plaintiffs' observation that similar opioid-related cases were remanded or never removed is correct but irrelevant. First, Defendants of course did not remove cases during the period in which Dr. Sackler was still a Texas citizen because diversity was lacking. In any event, removal is not mandatory. Nothing in the statute or case law precludes a party from electing to remove one case but declining to remove another, similar case. While federal courts are courts with limited jurisdiction, "parties have rights to choice of forum" and those rights "should carry no pejorative cost of 'forum shopping.'" *Howery v. Allstate Ins. Co.,* 243 F.3d at 916, 919 (5th Cir.

2001).  Plaintiffs cite no law or precedent suggesting that because Purdue elected not to remove other cases, it may not remove these cases.

**CONCLUSION**

For the foregoing reasons, Purdue Pharma L.P. respectfully asks the Court to deny Plaintiffs' Joint Motion to Remand, or, in the alternative, defer adjudication of this motion until after resolution of the transfer of Plaintiffs' action to the MDL.

Dated: January 8, 2019               Respectfully submitted,

*/s/ Noelle M. Reed*
Noelle M. Reed
Federal Bar No. 27139
State Bar No. 24044211
noelle.reed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas  77002
Tel:  (713) 655-5122
Fax:  (713) 483-9122

***Purdue Pharma L.P.; Purdue Pharma Inc.;
and The Purdue Frederick Company, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2019, the forgoing document was transmitted to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing for this filing to all registered counsel of record.

*/s/ Noelle M. Reed*
Noelle M. Reed